IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JOSEPH DALE MOSS, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | 2:15-CV-0079 |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
TO DENY PETITION FOR A WRIT OF HABEAS CORPUS
BY A PERSON IN STATE CUSTODY**

Petitioner JOSEPH DALE MOSS has filed with this Court a Petition for a Writ of

Habeas Corpus by a Person in State Custody challenging his conviction out of the 251st Judicial

District Court of Randall County, Texas, for the felony offense of sexual assault, enhanced and

the resultant 50-year sentence.  For the reasons set forth below, the United States Magistrate

Judge is of the opinion petitioner's application for federal habeas corpus relief should be

DENIED.

I.
PROCEDURAL HISTORY

On February 23, 2011, petitioner was charged by indictment in Cause No. 21,941-C with

the offense of sexual assault, enhanced with two prior felony convictions.  [ECF 9-3 at 6].

Petitioner pleaded not guilty to the offense; however, on June 21, 2012, a jury, after trial, found

petitioner guilty and sentenced him to a 50-year term of imprisonment.  *See State v. Moss*, No.
21,941-C.  [ECF 9-3 at 56].

On August 15, 2013, the Court of Appeals for the Seventh District of Texas affirmed
petitioner's conviction on direct appeal.  *Moss v. State*, 07-12-00326, 2013 WL 4624644, at *1
(Tex. App.—Amarillo August 15, 2013, pet. ref'd).  On January 15, 2014, the Texas Court of
Criminal Appeals refused petitioner's petition for discretionary review of the intermediate
appellate court's determination.  *Moss v. State*, PD-1233-12.

Petitioner sought collateral review of his Randall County conviction by filing a state
habeas corpus petition and, on February 11, 2015, the Texas Court of Criminal Appeals denied
petitioner's state habeas application without written order.  *In re Moss*, No. 82,493-02.  [ECF 9-
20].[1]

Petitioner deposited the instant federal habeas petition in the prison mail system on
March 12, 2015, and respondent filed her answer July 9, 2015.

## II.
## FACTUAL HISTORY

Respondent has fully set out the factual history of petitioner's case, and petitioner has not
refuted those facts as presented.  Accordingly, the Court adopts and recites the facts as presented
by respondent, with internal citations omitted.  [ECF 12 at 4-9].

"The victim, Teresa Shaw, testified against Moss at trial. Shaw testified that she first met
Moss in 2010 when she was working as a cashier and busser at Butch's Bar-B-Que and Moss
was a customer at the restaurant. Shaw and Moss began a dating relationship in June of 2010.
Shaw testified that in October 2010, she lived with her then-thirteen-year-old daughter, Hannah,

---

[1] Petitioner's first state habeas application was dismissed as procedurally noncompliant with Tex.R.App.P 73.1 on
December 10, 2014.  [ECF 9-15].

as Hannah's caretaker. Shaw further testified that until the night before the incident in question, she and Moss had a 'good' relationship with only normal disagreements.

"Shaw testified that on the night of October 6, 2010, she was at Moss's house and took a picture of Moss while he was asleep on the couch. Shaw testified that taking the picture 'set him off,' and Moss began saying things like 'he didn't want his GD picture taken, and it is a good way to get my F-ing phone broke.' Although Moss did not want Shaw to leave and told her that her leaving would only further 'piss him off,' Shaw left Moss's house that night.

"Shaw testified that Moss began texting her early the next morning, and she responded that they would need to talk later because she was at work. After Shaw got off work and went home to fix her daughter's dinner, at some time after nine in the evening, she drove over to Moss's apartment. When Shaw arrived, she sat down in a recliner in Moss's living room, and Moss immediately began yelling at her about the picture. Shaw and Moss argued. Shaw asked to leave, but Moss would not let her go and insisted that they talk about the situation. Shaw and Moss continued to disagree, so Shaw got up and walked toward the door to leave. Moss hit her and rammed her into the doorframe, but immediately apologized. Moss then picked up Shaw and carried her into the living room while calling her 'all kinds of names.' Shaw testified that by this point she 'was scared to death' and had 'never been in a position like this.' Moss told Shaw to get in to the bedroom and take her clothes off. Shaw tried to get away, but Moss several times picked her back up. At some point, Shaw moved to the bedroom herself, thinking '[l]et him do it, so I can get out of here.' Shaw also testified that it was clear to her that she was going to be harmed.

"Shaw then testified that once she and Moss were in the bedroom, she took off all her clothes and he continued to yell and scream at her. Moss continued to say that he was going to

'fuck' Shaw, and she would say things like '[j]ust do it and let me go,' or she would 'make a dash for the door,' but Moss would throw her back onto the bed.  Eventually Moss got Shaw into bed, but 'he didn't even make a move,' he just laid there and called Shaw names.

"At some point, Shaw was able to get outside. Shaw was not dressed except for her underwear, but she had her car keys, so she jumped into her car and started the engine. By this time, Moss had reached Shaw's car and stood between Shaw and the car door.  Shaw put the car in reverse with Moss hanging from the car door, but Moss reached through the steering wheel and grabbed Shaw's keys from the car's ignition.  Moss, holding Shaw's keys, told Shaw that he would give Shaw her keys if she would come back into the house.  Shaw then found a 'hoodie' in the backseat of her car and put it on before going back into the house with Moss.

"Once Shaw and Moss re-entered Moss's house, Moss gave Shaw her keys. When Shaw began to leave, though, Moss got her into a 'sleeper hold,' picked her up, and began taking her to his room. Shaw bit Moss and he dropped her, but Moss immediately picked Shaw back up, took her to his bedroom, and threw her down.  Once Shaw and Moss were in Moss's bedroom, Moss covered Shaw's mouth and began choking her and telling her to shut up. Shaw tried to 'make a run for it again,' but Moss got ahold of her in the living room and told her that if she 'would just let him have his way' he would let her go.

"Shaw testified that she then bent over with her head on the arm of the recliner, and Moss 'had his way' with her.  Shaw testified that Moss put his penis inside her vagina. While this occurred, Shaw 'laid there and cried and prayed for it to be over.'  After this, Moss kissed Shaw on the back, told her he loved her, and allowed her to leave.  Shaw also testified that alcohol played a role in the events that occurred that night.

"Shaw then left Moss's house and went home to her daughter and tried to sleep because she was scheduled to work the next morning.  Shaw testified that she did not call the police that night because she 'didn't want to go through all this' and 'just wanted him to go away.'  However, Shaw testified that Moss began calling her and sending her text messages. Shaw indicated to Moss that she did not want to see him, but Moss was insistent and, at one point, told Shaw that he was right outside.  Moss also told Shaw via text message that he was going to show up at her work.  Shaw testified that she told Moss not to do that.

"Shaw went into work the next morning at some time around eleven, having bathed before she did.  Moss showed up at Butch's Bar-B-Que, Shaw's place of employment, and Shaw's boss stepped outside and spoke with Moss while Shaw went into the bathroom and hid.  While at work, Shaw called the police department and then the Sherriff's department to report the incident.  Later that morning, an officer came and took Shaw's statement and, eventually that day, Shaw went to the hospital and had an examination.  Moss continued to try to contact Shaw, so Shaw quit responding and gave the Sherriff her phone.

"Moss testified that she stayed at her own home that night, October 8, 2010, but stayed with a friend the following night.  While staying with her friend, Shaw received and (sic) handwritten letter from Moss.  Shaw turned the letter over to the Sherriff's department, and, over the defense's objection, the letter was introduced into evidence at trial.  The letter, in part, reads

> To tell you the truth, I really don't remember too much about Thursday night. I remember bits and pieces. And I know I scared you and freaked you out. . . .
>
> I don't know why I work so very, very hard to make things go my way and to built (sic) a good life, then in the blink of an eye, I self-destruct and throw it all out the window. I have been like that a long time. If things start going too good, I seem to feel the need to sabotage my own life. I really believe that I have serious mental issues and need to get help. But, first, and foremost, I have to quit drinking. I don't want to, but I have to.

"Additionally, over numerous objections from the defense, a DVD containing photographs of text messages exchanged between Shaw and Moss was also introduced into evidence.  One text exchange reflects that Shaw told Moss, on the evening of October 6, 2010, that their relationship was moving too fast and that she 'did want it to work, but we are really different people.'  Shaw also told Moss via text that she would be busy with Hannah for the next few days, but once Hannah was with her father for the weekend, she and Moss could meet to 'calmly try to work this out.'  In subsequent text messages Moss asked Shaw to come over that night. Another text exchange shows that Moss texted Shaw the morning after the incident in question, prompting Shaw to text in reply, 'No. I'm with Hannah. I'm bruised and sore. You called me every name in the book. We don't love each other. Please, leave me.'  In another text message, Shaw told Moss, 'I'm scared of you. I gotta do what's right. Last night was not right. I would be stupid to be around you. Please leave.'

"At trial, the jury also heard testimony from State witnesses Melvin D. Testerman, Shaw's boss at the Bar-B-Que restaurant; three law enforcement officers, who responded to or were involved in investigating this case; and, a sexual assault nurse, who reviewed the records of the medical examination that was performed on Shaw."

III.
PETITIONER'S ALLEGATIONS

Petitioner contends he is being held in violation of the Constitution and laws of the United States because:

1.    Petitioner received ineffective assistance of trial counsel because counsel failed to:

        A.    Investigate and prepare for trial, including the failure to call witnesses or present evidence at trial;

       B.      Advise him improperly during the plea-bargain process;

       C.      Raise the issue of petitioner's competency;

       D.      Request a continuance at trial in writing; and

       E.      Object to, or request a mistrial on, eight instances of improper victim testimony.

2.      The trial court abused its discretion because it failed to:

       A.      Inquire about petitioner's competency during trial; and

       B.      Grant a continuance.

3.      The trial judge was biased.

4.      Petitioner was denied a fair trial based upon the cumulative effect of trial court and attorney errors.

5.      Petitioner received ineffective assistance of appellate counsel because counsel failed to:

       A.      Properly brief the claim regarding trial counsel's ineffectiveness for failing to request a mistrial;

       B.      Raise a claim regarding the trial court's failure to address petitioner's competency; and

       C.      Raise a claim that trial counsel was ineffective for failing to request a continuance.


IV.
STANDARD OF REVIEW

In her July 9, 2015 answer, respondent thoroughly and accurately briefed statutory and case law regarding the applicable standards of review under 28 U.S.C. §2254 proceedings [ECF 12 at 9-14], and for claims of ineffective assistance of counsel under the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) [ECF 12 at

24-28].  The Court will not repeat respondent's recitation regarding these standards of review except as necessary to the Court's analysis herein.

V.

MERITS

1.

Ineffective Assistance of Trial Counsel

A.

Lack of Investigation and Trial Preparation

Petitioner first contends trial counsel, although appointed ten months prior to trial, made minimal effort to conduct an investigation until approximately six weeks prior to trial.  Petitioner avers trial counsel used an investigator to interview only one witness, the victim's boss, and failed to pursue multiple potential witnesses provided by petitioner, including the victim's ex-husband and her daughter, whom petitioner argues could have supported his claims the victim had a history of fighting and having "make-up sex" in contradiction of the claims against him.

In order to establish counsel's ineffectiveness for failing to investigate, petitioner must do more than merely make an allegation – he must state with specificity what the investigation would have revealed, what evidence would have been discovered, and how that evidence would have altered the outcome of the trial.  *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994); *Rose v. Johnson*, 141 F.Supp.2d 661, 691 (S.D. Tex. 2001).  Petitioner alleges additional investigation would have led to the discovery that the victim had a history of combative behavior followed by consensual "make-up sex;" however, petitioner has not identified any evidence to support this claim whatsoever.  Although petitioner claims further investigation would have led to multiple witnesses to support his version of events, he has provided no affidavits from these witnesses setting out what they would have testified to or demonstrated that these witnesses

would have testified at all.  Petitioner's general allegations that trial counsel failed to investigate certain facts and then to obtain witnesses to testify are too vague and conclusory; as such, they do not present a constitutional issue.  *See Miller v. Johnson,* 200 F.3d 274, 282 (5th Cir.2000) (citing *Ross v. Estelle,* 694 F.2d 1008, 1012 (5th Cir.1983)).

Additionally, as set out by respondent, in the state habeas proceeding, trial counsel provided an affidavit wherein he testified that he did, in fact, contact a number of potential witnesses including petitioner's employer/landlord, the Randall County sheriff, whom petitioner said was a friend, the victim's employer and even petitioner's father.  [ECF 9-23 at 3-6].  None of these witnesses, however, was probative to petitioner's case and at least one witness refused to testify.  [*Id.*].  Petitioner has not demonstrated witnesses existed who could and would have testified and been used to impeach the victim's testimony with the requisite specificity required.  Moreover, petitioner has failed to show how the lack of such testimony has prejudiced him.

Complaints of uncalled witnesses are not favored because they are considered trial strategy, and strategic choices, made after a thorough investigation of both the law and facts, are "virtually unchallengeable."  *Strickland v. Washington*, 466 U.S. 668, 690-91, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984).  This is a heavy burden that requires a "substantial," and not merely a "conceivable," likelihood of a different result.  Petitioner has not met this burden with regard to these ineffective assistance of trial counsel claims.  Accordingly, the Court finds that such claim is without merit and should be denied.

### B.
#### Advice During Plea-Bargain Process

Petitioner next avers trial counsel was ineffective for giving him erroneous advice on the penalty range of punishment in his case in light of the state's one-time, 12-year plea-bargain offer.  Petitioner appears to argue the state's offer, made at the beginning of the period counsel

was appointed to represent him, combined with counsel's recommendation that he take the offer,

demonstrate trial counsel's advice was somehow ill-investigated and erroneous because

petitioner ultimately received a fifty year sentence after trial.  As recited in his state habeas

affidavit, trial counsel conveyed the state's 12-year offer with a waiver of appeal to petitioner

and discussed the offer at length.  [ECF 9-23 at 8-10].  Counsel advised he explained to

petitioner a guilty finding, combined with true findings on both enhancement paragraphs, would

result in a possible punishment range of 25 to 99 years in prison.  Counsel further explained he

told petitioner it was his opinion the second enhancement paragraph was invalid but that, even

with only a single enhancement finding, the range of punishment would be 5 years to 99 years or

life.  [ECF 9-23 at 8-9].  Counsel stated petitioner was aware of this punishment range, was

aware of counsel's experience with these type of cases and his educated recommendation, was

aware of his own criminal history that would affect the sentence, was aware of counsel's theory

of defense to be presented at trial, and was aware of his inability to testify on his own behalf due

to the unlikelihood of success at trial; yet, petitioner refused to take the deal.  [ECF 9-23 at 10].

As stated by respondent

> The record supports the explanation set forth in trial counsel's affidavit. [Petitioner] thus
> fails to prove that trial counsel's performance was deficient with respect to the State's
> plea offer. And as such, [petitioner] certainly cannot prove that, but for trial counsel's
> alleged errors, he would not have proceeded to trial and would instead have accepted the
> State's plea offer.

[ECF 12 at 34].  The Court agrees and finds such claim lacks merit and should be denied.


## C.
### Failure to Raise the Issue of Petitioner's Incompetence

The conviction of a mentally incompetent defendant violates the Due Process Clause.

*Deville v. Whitley*, 21 F.3d 654, 656 (5th Cir. 1994).  Petitioner urges this Court to find trial

counsel ineffective for failing to raise the issue of competency after petitioner's self-described suicide attempt during trial. Specifically, on the morning of the second day of trial, petitioner informed the jail staff where he was housed that he had taken some unauthorized medication and he refused to be transported to the courthouse for trial. [ECF 9-11 at 117-119]. Petitioner sent a letter to the trial court judge indicating his intention to commit suicide. [ECF 9-11 at 127]. The prosecution introduced two witnesses, both jail staff employees, and based on this testimony, including that petitioner was lucid and aware of his surroundings, the trial court found petitioner had voluntarily absented himself from trial and continued the proceedings without him. [ECF 9-11 at 120, 122, 129, 131]. Trial counsel orally moved for a continuance, but the trial court denied the motion and the trial proceeded. [ECF 9-11 at 130-131].

The test of competency is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding--and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402 (1960). As stated by respondent, a defendant's attorney is often in the best position to determine his client's competency. *See Colburn v. Cockrell*, 37 Fed. Appx. 90 (5th Cir. 2002). Petitioner's trial counsel, in his state habeas affidavit, stated,

> At no time during my preparation for trial or dealing with Mr. Moss, either before trial or during the first day of trial, was there evidence that he was incompetent. He was never at a lack of words for how he wanted his defense conducted. He was very involved in the course of his defense, albeit our opinions diverged greatly. Joe did appear unnerved when Theresa Shaw actually appeared at trial and began to give testimony harmful to him because he truly believed, in my opinion, that she would not. I felt his attempt at over-medication was an attempt to stall the trial, possibly because he believed that it would not continue unless he was present. The officers' testimony concerning Joe's refusal to attend court and a lack of behaviors which might have suggested incompetence confirmed my own observations of Joe. I requested a short break in the trial to visit with Joe for the sole purpose of perhaps persuading him to attend his own trial. I was not concerned with his competence to stand trial.

[ECF 9-23 at 11].

Significantly, petitioner has put forth no evidence to show that he was incompetent at the time of his trial or even that there was any reason for either his trial counsel or the state trial judge to question his competence. Petitioner merely makes a self-serving allegation that his self-described suicide attempt and failure to attend trial rose to the level of incompetency to stand trial. Petitioner has failed to demonstrate there was a competency issue at all, let alone meet his ineffective assistance of counsel burden under *Strickland*. As referenced by respondent, trial counsel found petitioner's actions to be a mere tactic; indeed, the letter petitioner penned to the trial court on the day of his absence alone shows he was fully capable of understanding and participating in his own defense. Based on the letter and the testimony of jail employees, the trial court found petitioner had voluntarily absented himself from the trial. [ECF 9-11 at 129-130]. Petitioner's claim that counsel was ineffective for failing to raise the issue of competence is without merit, conclusory and should be denied.

### D.
### Failure to File Written Motion for Continuance

Petitioner next avers, along the same line of reasoning, that trial counsel was ineffective for failing to file a written motion for continuance upon petitioner's attempted suicide and refusal to attend his trial proceedings. As discussed *supra*, trial counsel requested a continuance upon the trial court's finding that petitioner had voluntarily absented himself from trial, albeit orally, arguing he would like an opportunity to converse with his client in an attempt to persuade him to appear. [ECF 9-11 130-131]. The trial court denied the motion.

In order to constitute ineffective assistance of counsel, counsel's performance must have fallen below an objective standard of reasonableness as determined by the norms of the profession. Courts review counsel's performance from counsel's perspective at the time of trial,

not from hindsight. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A reviewing court's scrutiny of trial counsel's performance is highly differential, requiring the court to presume counsel has rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 690; *Amos v. Scott*, 61 F.3d 333, 347-48 (5th Cir. 1995).

Conclusory allegations in support of a claim of ineffectiveness of counsel, unsupported by any specific facts, do not merit federal habeas relief. *Ross v. Estelle*, 694 F.2d at 1011-12. The court must examine the proceedings as a whole, giving due consideration to the weight of the evidence supporting the verdict and evaluating the alleged failings of counsel in that total setting. *Moore v. Johnson*, 194 F.3d 586 (5th Cir. 1999).

To the extent petitioner argues trial counsel should have re-urged a motion for continuance in writing, to possibly follow up on petitioner's competency and/or discuss further trial strategy, the undersigned finds trial counsel's representation in this regard was not deficient. In his affidavit, trial counsel clearly set out that, in his opinion, a formal, written motion for continuance was "ill-advised" since petitioner had voluntarily absented himself from the trial. [ECF 9-23 at 12]. Counsel's explanation shows the decision to not seek a continuance was based upon sound trial strategy. *See* Tex. Code Crim. Proc. Ann. art. 29.13 (Vernon 2012) (mandating a continuance after trial has begun will be granted only if "the applicant is so taken by surprise that a fair trial cannot be had"). Counsel's failure to request a continuance in writing is a "virtually unchallengeable" strategic decision. *See Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066.

Moreover, petitioner has failed to demonstrate prejudice. Petitioner does not show the trial court would have granted a continuance if his trial counsel had reduced the request to

writing. To the contrary, the grounds for any written motion for continuance would have likely

been the same as that in the oral request, and the trial court declined to grant an oral continuance.

Petitioner also cannot show what benefit he would have gained if the trial court had granted the

continuance. Petitioner again bases his argument on his assumption that further communication

with his trial counsel could have resulted in a different trial outcome. Evidence beyond mere

assumption is necessary for federal habeas corpus relief. *See Ross*, 695 F.2d at 1011. The state

habeas courts found this sound trial strategy to be credible in denying relief. Petitioner has failed

to rebut defense counsel's averments, leaving nothing more than petitioner's own conclusory

allegations in support of this particular claim, which should be denied.

E.
Failure to Object to Victim Testimony

By his next claim, petitioner argues trial counsel failed to object to, or request a mistrial,

when the victim testified in violation of the trial court's *in limine* order. Specifically, the trial

court granted trial counsel's motion that prior to the introduction of evidence at trial of prior

extraneous offenses, prior bad acts or prior convictions of petitioner, the parties would approach

the bench for an admissibility determination. [ECF 9-9 at 6-7]. At trial, during her cross-

examination testimony, the victim referenced, three (3) times, the fact that petitioner had served

time in jail prior to trial. [ECF 9-11 at 194, 207, 208]. Immediately after this testimony, outside

the presence of the jury, the trial court instructed the state to inform its witness about the *in

limine* order regarding prior convictions including prior jail time. [ECF 9-11 at 209].[2]

Petitioner's trial counsel concedes he did not object during trial when the victim referenced

---

[2] Petitioner also references text messages between himself and the victim and cites to the record as evidence of
violations of the *in limine* order. A review of that portion of the record, however, shows there was a conference,
held outside the presence of the jury, where the parties met with the trial judge to determine, among other things,
whether certain text messages required redaction, thereby taking out references to petitioner's previous jail time, so
as not to violate the *in limine* order. [ECF 9-11 at 102].

petitioner's time in jail, but states the references were so fleeting that he himself was unaware of a *limine* violation until the trial judge later admonished the state.  [ECF 9-23 at 13].  Counsel stated in his affidavit that he made the decision to forego any objection in front of the jury and/or request any curative instruction because it was his belief that such action would only highlight what were, at that point, mere references to vague allegations of prior misconduct.  [ECF 9-23 at 14].  Counsel stated he wanted these references to be buried in the record thereby avoiding resurrecting their existence.  [*Id.*].

This claim falls within the province of trial strategy.  As discussed *supra*, petitioner's success on such a claim is a heavy burden requiring a "substantial," and not simply a "conceivable," likelihood of a different result.  Petitioner has failed to meet his burden and is not entitled to relief.  Moreover, petitioner has failed to show the state court's finding and denial of relief was based on an unreasonable application of federal law or was based on an unreasonable determination of the facts.  Petitioner's claim is without merit and should be denied.

2.  Abuse of Discretion – Trial Court

A.
Failure to Inquire into Petitioner's Competency during Trial

As a preliminary matter, and as set forth by respondent, any claim that the trial court erred as a matter of Texas law is not cognizable herein.  This federal habeas corpus court is to consider only matters of federal constitutional rights and/or breaches and is precluded from addressing matters of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 479-80, 116 L.Ed.2d 385 (1991) ("federal habeas corpus relief does not lie for errors of state law," a claim that state law has been violated is generally not cognizable on federal habeas).

Petitioner's claim of the trial court's abuse of discretion and violation of his due process rights related to his competence is not altogether clear.  As recited by respondent, petitioner does

not comprehensively assert a claim of incompetence in fact. Rather, and giving petitioner the benefit of liberal habeas interpretation, it appears he takes issue with the trial court's failure to *sua sponte* inquire into his competency during trial as a procedural matter. *See Pate v. Robinson* 383 U.S. 375, 86 S. Ct. 836, 15 L. Ed. 2d (1966); *Miller-El v. Johnson*, 261 F.3d 445, 453 (5th Cir. 2001), rev'd sub nom., *Miller-El v. Cockrell*, 537 U.S. 322, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003)(a habeas petitioner may allege that state procedures were inadequate to ensure that he was competent to stand trial. A trial court must conduct an inquiry into the defendant's mental capacity sua sponte if the evidence raises a bona fide doubt as to competency).

As set out *supra* in paragraph V.1.C., the state court record reflects that on the second day of trial, the trial court heard testimony from jail employees who interacted with petitioner and found petitioner had purposefully absented himself from the proceedings. According to petitioner's trial counsel, this maneuver was a tactic implemented in an attempt to stall the trial proceedings. [ECF 9-23 at 11]. The trial court observed petitioner's demeanor on the first day of trial, read the letter he submitted to the trial court upon his refusal to appear, interviewed people who had interacted with him that morning and discussed the situation with petitioner's own counsel. Petitioner has directed this Court to nothing in the record indicating the trial court had reason to believe his competency was at issue so as to require the trial court to conduct an inquiry. Consequently, this claim should fail.

B.
Failure to Grant Continuance

Petitioner argues the trial court denied him due process when it declined to continue his trial on the second day. As discussed at length *supra*, the trial court found petitioner voluntarily absented himself from the court proceedings on day two and, upon oral motion by defense counsel, declined to continue the proceedings. Petitioner makes the sweeping allegation this

action violated his due process rights; however, he has failed to specifically articulate how the trial court erred and what specific federal constitutional right was violated.  Respondent is correct however, that if petitioner presents a claim that he had a right to be present at trial, his claim nonetheless fails.  *See Clark v. Scott*, 70 F.3d 386, 389-390 (5th Cir. 1995)(criminal defendant's absence from trial may constitute a waiver of his right to be present).

It appears to this Court petitioner more likely argues the trial court's denial of a continuance violated his due process rights in that the trial court constructively denied him effective assistance of counsel.  [Petitioner's Brief, ECF 4 at 33].  Liberally construing petitioner's habeas application, it seems petitioner complains the trial court failed to continue the proceedings and to conduct some kind of inquiry, based upon his letter to the court, whether a conflict of interest between petitioner and trial counsel existed.  Petitioner appears to argue the failure of the trial court to perform such an inquiry resulted in the trial court refusing petitioner a continuance of his trial and the denial of his request for new counsel.  Petitioner appears to contend the trial court's actions were an abuse of discretion and resulted in the denial of a fundamentally fair trial.

A trial court does not have an affirmative duty to inquire into the possibility of defense counsel's conflict of interest, or investigate a non-specific and conclusory assertion of a conflict of interest.  *See United States v. Greig*, 967 F.2d 1018, 1022 (5th Cir. 1992); *Stephenson v. State*, 255 S.W.3d 652, 655-56 (Tex.App.–Fort Worth 2008, pet. ref'd).  A trial court is, however, obligated to inquire into a potential conflict of interest that has been brought to the court's attention.  *See Holloway v. Arkansas*, 435 U.S. 475, 484, 98 S.Ct. 1173, 1178-79 (1978); *Routier v. State*, 112 S.W.3d 554, 581 (Tex.Crim.App. 2003).  Moreover, when it is shown an attorney is operating under an "actual conflict of interest," the court must conduct a hearing to determine

whether the defendant knowingly and voluntarily waives his right to conflict-free representation. *See United States v. Carpenter*, 769 F.2d 258, 262-63 (5th Cir. 1985).  When a petitioner alleges a failure to conduct an inquiry, the petitioner must establish an actual conflict of interest adversely affected counsel's performance.  *See Mickens v. Taylor*, 535 U.S. 162 (2002).

Petitioner alleges no true "conflict of interest" in the sense of counsel being torn or divided between competing interests or loyalties that could potentially affect legal representation, such as in cases of multiple representation, or in the sense of a conflict involving the attorney's self-interest against the duty of loyalty to his client.  Instead, petitioner alleges differences arose between him and his counsel concerning the investigation of his case, theory of defense, and the benefit of the testimony of certain witnesses.

It appears, at least to some extent, the trial court was apprised of a potential alleged issue of a conflict between counsel and petitioner by petitioner's note to the court on the second day of trial.  The trial court read the note, but determined petitioner had voluntarily absented himself from the proceedings and then denied trial counsel's request for a continuance.  To the extent petitioner was obligated to raise a conflict of interest issue necessitating an inquiry, the trial court's actions implicitly demonstrate petitioner did not make an adequate showing of an actual conflict of interest between petitioner and his counsel.[1]

Petitioner has not shown a valid basis for a continuance of the trial, nor has he demonstrated a denial of due process, of a fair trial, or of any other federally protected constitutional right. Petitioner raised this claim during his state habeas corpus proceeding and has not shown the state

---

[1]Under Texas law, petitioner had the burden of proving he was entitled to a change of counsel by making a proper showing of appointed counsel's actual conflict of interest.  *See Malcom v. State*, 628 S.W.2d 790, 791 (Tex.Crim.App. [Panel Op.] 1982). Petitioner could not carry his burden with vague expressions of dissatisfaction, *see Maes v. State*, 275 S.W.3d 68, 71–72 (Tex.App.-San Antonio 2008, no pet.), personality conflicts, or disagreement concerning trial strategy.  *See King v. State*, 29 S.W.3d 556, 566 (Tex.Crim.App. 2000); *see also Carroll v. State*, 176 S.W.3d 249, 255 (Tex.App.-Houston [1st Dist.] 2004, pet. ref'd) (recognizing conflict of interest may warrant court's exercise of discretion to appoint substitute counsel but that general allegations of communication breakdown and lack of cooperation did not require substitution of counsel).

court's denial of his conflict of interest claim was unreasonable. Petitioner's claim should be denied.

### 3. Trial Judge Bias

Petitioner next argues the trial judge was biased against him not only because the court was aware of petitioner's dissatisfaction with his trial counsel yet allowed counsel to proceed, but also because the court failed to grant a continuance during trial. The Due Process Clause guarantees a criminal defendant the right to a fair and impartial proceeding, including a judge who holds no actual bias against the defendant nor retains a personal interest in the outcome of the defendant's particular case. *Richardson v. Quarterman*, 537 F.3d 466, 474 (5th Cir. 2008) (citing *Bracy v. Gramley,* 520 U.S. 899, 117 S.Ct. 1793, 1797, 138 L.Ed.2d 97 (1997)). Bias is not lightly established, and general allegations are insufficient to establish a constitutional violation. *Watson v. Davis*, CV SA-16-CA-090-OLG, 2017 WL 3841927, at *12 (W.D. Tex. Aug. 31, 2017).[3] "Disagreeing with a judge's rulings is not the same as establishing bias, however, and [petitioner] points to no evidence of the trial court displaying a 'deep-seated favoritism or antagonism that would make fair judgment impossible.'" *Id*. at *13 (citing *Liteky v. United States*, 510 U.S. 540, 555 (1994)). Petitioner has failed to demonstrate trial court bias, let alone bias of a constitutional magnitude; thus, his claim should be denied.

### 4. Cumulative Error

Petitioner states "Petitioner fully understands that Cumulative error alone is not an independent ground for relief, but it does allow the Honorable Court to see a (sic) over-all picture of the denial of a fair trial." [Petitioner's Brief, ECF 4 at 28]. However, petitioner appears to re-urge, albeit in the context of cumulative errors at trial, that his due process rights

---

[3] Petitioner has not alleged, and this Court declines to address, the issue of presumptive bias except to note that the United States Supreme Court has identified three conflict-of-interest types of presumptive bias, none of which apply to petitioner's case. *See Bigby v. Dretke*, 402 F.3d 551, 559 (5th Cir. 2005)

were violated.  For the reasons set out herein, petitioner's various claims of trial court error are without merit; consequently, there could be no cumulative effect of errors.  Moreover, petitioner has not shown the state court's rejection of this claim was unreasonable.  Petitioner's claim should fail.

### 5.   Ineffective Assistance of Appellate Counsel

Petitioner claims appellate counsel was ineffective for failing to: (1) properly brief the claim regarding trial counsel's ineffectiveness for failing to request a mistrial; (2) raise a claim regarding the trial court's failure to address petitioner's competency; and (3) raise a claim that trial counsel was ineffective for failing to request a continuance.  To make a claim of ineffective assistance of appellate counsel, a petitioner must, as is required for a claim regarding ineffective assistance of trial counsel, meet *Strickland's* two-prong test.  *Smith v. Robbins,* 528 U.S. 259, 285 (2000).  To establish deficient performance, a petitioner must show that counsel on appeal unreasonably failed to discover and raise nonfrivolous issues.  *Id.*  To establish prejudice, the petitioner "must show a reasonable probability that, [but for counsel's error], he would have prevailed on appeal."  *Id.* at 285-86 (citing *Strickland,* 466 U.S. at 694).  To do this, he must show "that a particular nonfrivolous issue was clearly stronger than issues that counsel did present."  *Id.* at 288.  The federal court is required to use the "doubly deferential" standard of review that credits any reasonable state court finding of fact or conclusion of law and that presumes appellate counsel's performance fell within the bounds of reasonableness.  *Burt v. Titlow*, 134 S.Ct. at 13.

On direct appeal, petitioner's counsel raised two issues, that the trial court erred in admitting the S.A.N.E. record in violation of petitioner's Sixth Amendment rights and that trial counsel was ineffective for failing to request a mistrial based upon victim testimony in violation

of the trial court's *in limine* order.  [ECF 9-1 at 3].  Petitioner now claims appellate counsel's failure to raise the additional claims of ineffective assistance of trial counsel and failure to properly brief the issue of the *in limine* order constituted ineffective assistance of appellate counsel and that the trial court record clearly supports such claims.

Appellate counsel's focus on these two issues, and the winnowing out of weaker arguments, is not evidence of incompetence but instead is the hallmark of effective appellate advocacy.  *Smith v. Murray*, 477 U.S. 527, 536, 106 S. Ct. 2661, 2667, 91 L. Ed. 2d 434 (1986) (citing *Jones v. Barnes,* 463 U.S. 745, 751-752, 103 S.Ct. 3308, 3312-3313, 77 L.Ed.2d 987 (1983)).  Moreover, petitioner has failed to demonstrate that the trial record provides adequate support of his allegation of ineffective assistance on appeal.  The Texas Court of Criminal Appeals has held as a matter of state law that the more appropriate vehicle for an ineffective assistance claim is a state habeas corpus petition.[4]

> Generally the record on direct appeal will not be sufficient to show that counsel's representation was so deficient as to meet the first part of the *Strickland* standard.  The reasonableness of counsel's choices often involves facts that do not appear in the appellate record.  A petition for writ of habeas corpus usually is the appropriate vehicle to investigate ineffective-assistance claims.

*Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002).  In petitioner's case, he presented his ineffective assistance claim at state habeas review, and it was rejected.  Petitioner has not provided to this Court any argument of substance supporting his claim that appellate counsel was ineffective or which would show the state habeas court erred in denying his ineffective assistance of trial counsel claims.

VI.
RECOMMENDATION

---

[4] As discussed by respondent, it was this tenet of law to which the appellate court referred *i.e.* that ineffective assistance of trial counsel claims are better handled on habeas review, and such statement in no way indicates appellate counsel's failure to fully brief an issue.  [ECF 12 at 46-47].

For the above reasons and the reasons set forth in respondent's Response filed July 9, 2015 [ECF 12], it is the RECOMMENDATION of the United States Magistrate Judge to the United States Senior District Judge that the petition for a writ of habeas corpus filed by petitioner JOSEPH DALE MOSS be DENIED.

VII.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of these Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED January 31, 2018.

LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

**\* NOTICE OF RIGHT TO OBJECT \***

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district

court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).

M:\Data\LAR\Hab54\Moss-79.DNY-IAC